NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

OVERLAND HAULING, INC.,
Respondent.

No. 71–1459.

United States Court of Appeals,
Fifth Circuit.

June 12, 1972.

Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Washington, D. C., Harold A. Boire, Director, Region 12, N. L. R. B., Tampa, Fla., Elliott Moore, Atty. N. L. R. B., Washington, D. C., for petitioner.

Frank E. Hamilton, Jr., Tampa, Fla., for intervenor.

Granville M. Alley, Jr., Tampa, Fla., for respondent.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The National Labor Relations Board seeks to enforce its order issued against respondent, Overland Hauling, Inc., on December 14, 1970, to remedy a refusal by the Company to recognize and bargain with Teamsters Local No. 385. Overland takes the position that the Union was improperly certified by the Board and that, therefore, its refusal to bargain was justified. The case is before us in the context of an unfair labor practice charge because such a proceeding is the only method by which an employer can obtain court review of the Board's certification of a union. N.L.R.B. v. Genesco, 406 F.2d 393 (5th Cir. 1969).

An election by Overland employees of the designated unit was held on August 8, 1969. The Union won by a 51 to 49 vote. On August 18, 1969, Overland timely filed objections to conduct allegedly affecting the result of the election. After conducting an administrative investigation into the allegations raised in the objections, the Regional Director issued a decision on October 16, 1969, finding that the objections were without merit and certifying the Union as the bargaining representative. On November 1, 1969, Overland filed a request for review of the Regional Director's decision and certification. That request was denied by the Board on November 18, 1969. Subsequently, Overland refused to bargain with the Union.

The Union filed an unfair labor practice charge on February 9, 1970. Thereafter, the Regional Director issued a complaint against Overland alleging violations of §§ 8(a) (1) and (5) of the Act. In its answer to the complaint Overland denied the validity of the certification and the commission of unfair labor practices. Simultaneously, Overland filed a motion to dismiss or to stay the unfair labor practice proceeding and to reopen the representation proceeding. This motion was accompanied by affidavits allegedly containing newly discovered evidence in support of Overland's original objections to the election.

In ruling on the Board's motion for summary judgment, the trial examiner found that the contents of the affidavits were not of such a nature as would probably change the outcome of the election, and that in any event it did not appear that the evidence had been previously unavailable. The motion for summary judgment was granted. On review the Board affirmed the trial examiner's findings, affirmed the Regional Director's findings in the representation case and issued its cease and desist order to Overland.

Overland contends that the order should not be enforced because (1) the unit determination was clearly erroneous, (2) the Regional Director erred in refusing to issue investigative subpoenas in the post-election proceedings precipitated by the objections, and (3) the Regional Director erred in not holding a requested hearing on the objections.

We affirm the Board's determination as to the appropriate bargaining unit, but remand the case for a hearing on the objections raised by Overland.

## UNIT DETERMINATION

Overland challenges the Board's unit determination on the two-fold basis that (1) multiple owner-drivers with helpers should not have been classified as supervisors, and (2) mechanics should not have been excluded from the unit.

Under § 9(b) of the Act, the Board is given power to decide in each case the unit appropriate for collective bargaining. The Board is given wide latitude in making such determination because the Act does not specify absolutely the constitution of a unit which is appropriate for bargaining. Such decision is relegated to the sound discretion of the authoritative agency. Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). On judicial review, the Board's determination will not be overturned lightly. N.L.R.B. v. Schill Steel Products, 340 F.2d 568 (5th Cir. 1965). Thus, our review of a Board determination of an

appropriate bargaining unit is narrowly circumscribed. Texas Pipe Line Co. v. N.L.R.B., 296 F.2d 208 (5th Cir. 1961). The Board's determination must be arbitrary or capricious to be set aside. Spartans Industries, Inc. v. N.L.R.B., 406 F. 2d 1002 (5th Cir. 1969).

■ The multiple owner-drivers lease their trucks to Overland and furnish helpers who drive the leased trucks other than the ones driven by the owner-driver. Overland admits in its brief that the helpers are recommended to it by the owner-drivers. This alone is enough to warrant the Board's classification under the Act.[1]

■■ The mechanics need not be included in a unit of drivers in order to secure an appropriate unit. Groendyke Transport, Inc. v. N.L.R.B., 438 F.2d 981 (5th Cir. 1971); N.L.R.B. v. Tallahassee Coca-Cola Bottling Co., Inc., 409 F.2d 201 (5th Cir. 1969). Although there are no absolute "right" units, the Board's determination will not be disturbed unless the choice has been made in a manner violative of the statute. N.L.R.B. v. Fidelity Maintenance and Construction Co., 424 F.2d 707 (5th Cir. 1970). We find no abuse of discretion or violation of the statute in the Board's exclusion of the mechanics from the unit.

## POST–ELECTION HEARING

The Union won the election by the slimmest of margins—51 to 49. Overland timely filed objections based on Board and Union conduct, which, if true, vitiated the laboratory atmosphere in which representative elections should be held. Although Overland requested a hearing on its objections, the Regional Director denied the request after making an independent investigation into the charges.

■■ Under the Act there is no specific requirement that the Board conduct post-election hearings. N.L.R.B. v. O. K. Van Storage, Inc., 297 F.2d 74 (5th Cir. 1961). The law is clear, however, that the Board must grant a hearing if it appears that the objections raise "substantial and material factual issues." Fones v. N.L.R.B., 431 F.2d 417 (5th Cir. 1970). To satisfy the requirement of "substantial and material factual issues," the challenging party must make a proffer of evidence which *prima facie* would warrant setting the election aside. N.L.R.B. v. Martin Building Material Co., 431 F.2d 1246 (5th Cir. 1970); Frito-Lay v. N.L.R.B., 422 F.2d 169 (5th Cir. 1970).

We think Overland's objections meet the test. "Specific evidence of specific events or about specific people" was alleged.[2] See United States Rubber Co. v. N.L.R.B., 373 F.2d 602 (5th Cir. 1967). It is apparent that the allegations raise issues which make a *prima facie* case for setting aside the election.

An important consideration is the closeness of the election. Here, any mi-

[1]. Section 2(11) provides:
"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

[2]. The objections alleged the following:
1. The polls were not opened until fifteen minutes after the appointed time.

2. Employees were allowed to vote who had been drinking heavily.
3. The Union falsely accused the Company General Manager of threatening the employees.
4. The Union's President stated to employees that if they didn't vote for the Union, the next time would "cost them money."
5. Union representatives bought drinks for Company employees on several occasions, both before and during the election.
6. The same Board agent who conducted the election was widely known to have attended a Union meeting six weeks earlier in order to investigate

nor violation of the Act cannot be dismissed summarily for it could have swayed the crucial vote. In a similar context, this Court opined:

"The question of whether a Company has presented the requisitely specific facts to raise substantial and material factual issues must always be answered in light of the context in which it is posed. There can be no abstract rules. The closeness of the election is obviously relevant. Conduct which could have affected only a few voters may not have any effect on the ultimate outcome of the election in cases where the vote disparity is large, but the same conduct in a close election could be determinative. In close vote election situations the Board is required to particularly and carefully scrutinize charges which in other cases would constitute immaterial or insubstantial objections to the election and, when the existence of hard evidence of irregularities is supplied, a full hearing to get at the truth should be accorded." N.L.R.B. v. Gooch Packing Co., Inc., 457 F.2d 361 (5th Cir. 1972).

Although we do not discount the investigation of the objections made by the Regional Director, we cannot say that such an *ex parte* investigation produces talismanically perfect results in all cases. Such is especially true where the election is close and the objections raised are substantial.

█ In short, we hold that material factual issues were raised regarding the validity of the results of the election, which issues should have been resolved at an adversary hearing. Howell Refin-

ing Co. v. N.L.R.B., 400 F.2d 213 (5th Cir. 1968).

In view of our disposition of this case, we do not reach the question of post-election investigative subpoenas.

The Board's ruling on the unit determination is affirmed but the case is remanded to the Board for a hearing on the matters contained in Overland's objections to the election. In order that the entire factual circumstances surrounding the election may come to light, the Board should receive any evidence offered by Overland tending to support the allegations in the affidavits which have been submitted.

Enforcement denied and case remanded for further proceedings.

alleged unfair labor practices by the Employer.

7. The employees were reluctant to talk about the Union's election conduct until several months after the election.

8. The Union representative told several employees that he obtained a scar on his eye "trying to keep someone from crossing the picket line."

9. The same representative, indicating his scar, told one employee in a group, "You wouldn't want to look like this."

10. The same representative "guaranteed" the Overland employees a raise and quoted a figure more than double the current Overland wage scale, stating that the Company would have "no choice" but to pay it.

11. Pro-Union employees constantly made reference to "mishaps" that could occur if their fellow drivers did not "go along" with the Union.