**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SCHWARTZ BROTHERS, INC., and District Records, Inc., Respondents.**

**No. 72–1150.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1972.

Decided Jan. 23, 1973.

Paul J. Spielberg, Atty., N. L. R. B., with whom Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., was on the brief, for petitioner.

John M. Bray, Washington, D. C., with whom Allen G. Siegel, Washington, D. C., was on the brief, for respondents. David J. Berman, Washington, D. C., also entered an appearance for respondents.

Before TAMM and LEVENTHAL, Circuit Judges, and CHARLES E. WY-ZANSKI, Jr.,* Senior United States District Judge for the District of Massachusetts.

TAMM, Circuit Judge:

This case comes to us on Application for Enforcement of an Order of the NLRB, relating to purported violations of 29 U.S.C. § 158(a)(5) and (1) (1970) [1] (§ 8(a)(5) and (1) of the Na-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. 29 U.S.C. § 158(a)(5) (1970):
   It shall be an unfair labor practice for an employer—
      to refuse to bargain collectively with the representatives of his employees,
subject to the provisions of section 159 (a) of this title.
29 U.S.C. § 158(a)(1) (1970):
   It shall be an unfair labor practice for an employer—
      to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

tional Labor Relations Act) for refusal on the part of the respondent, Schwartz Brothers, Inc., to bargain with the duly certified representative of its employees. We grant enforcement.

## I.  Facts

On September 14, 1970, Warehouse Employees Local Union No. 730, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [hereinafter "Union"], filed a petition for a representation election among the warehouse employees of Schwartz Brothers, Inc. [hereinafter "Company"]. The election was set by the Regional Director of the NLRB for December 15, and the Company's Request for Review of the Director's action was denied by the Board.

Five days immediately prior to the election the Company discharged Christopher Jeato from its employ, and subsequently posted the following notice on the warehouse bulletin board: "Notice of Discharge—Christopher Jeato has been fired because he was the No. 1 union man here." [2]  The Union, claiming it had intended to use Jeato as its observer at the election, disclosed at a meeting of Company, Board, and Union representatives on the morning of the 15th that it would not have an observer present at the election.  As a result, the Board agent in attendance was given a list of nine employees (subsequently pared to seven) appearing on the Company's eligibility list whom the Union wished to challenge.  The agent, aware of his delicate position of neutrality in representation elections, advised the Union that he would try to honor their challenge list on the basis of the reasons cited but would not be responsible if he failed to do so.  Despite continued insistence by the Union that Jeato be allowed as their observer, the Company refused to allow him on the premises except to

cast a challenged ballot—thus, as the polls opened only the Company observer and Board agent were present at the election table.

Eleven individuals were challenged during the course of the election: (a) Three individuals whom the Regional Director had found ineligible appeared to vote, and to each of them the agent stated: "Your vote is being challenged by the NLRB pursuant to its Decision and Direction of Election." (b) Jeato was challenged by the Company's representative and the Board.  The Board agent stated: "You are being challenged by the Board because your name does not appear on the eligibility list and by the [Company] on the ground that you have been terminated." (c) When each of the seven individuals on the Union's list appeared, the Board agent stated "The Union has challenged your right to vote" and added the specific basis for the challenge.  All of the challenged individuals were advised on how to cast a challenged ballot.  The election results showed 50 employees voted for representation by the Union, 24 against, and 11 cast challenged votes.

Six days thereafter the Company filed timely objections concerning the conduct of the election, contending that "when an NLRB agent, acting as the agent of the Union, challenges the ballots of employees whose names appear on the eligibility list, employees are led to believe that the NLRB favors the Union, and the neutrality and objectivity of the Board in the conduct of the election is destroyed."  In support of its contention the Company submitted only an affidavit of its own election observer, which essentially recited the facts as stated above and added that "[m]any of the seven challenges ["on behalf" of the Union] made by [the Board agent] occurred while other employees were in the voting area."  The Company additionally brought attention to the Board's

---

**2.**  As a result of Jeato's discharge the Union filed § 8(a)(3) and (1) charges against the Company. The charges were with-

drawn when Jeato was reinstated by the Company a few days after the election.

own Field Manual,[3] which at § 11338 reads in pertinent part:

> Any observer has the right to challenge a voter for cause. The Board agent must challenge anyone whose name is not on the eligibility list. Also, he must challenge a voter if he knows or has reason to believe that the voter is ineligible to vote, but, in this instance, he should not challenge until and unless none of the parties voices a challenge. *The Board Agent will not make challenges on behalf of the parties, whether or not such parties have observers present.* (Emphasis added.)

The Regional Director in his Supplemental Decision and Certification of Representative considered that although a departure from the literal mandate of § 11338 had possibly occurred, it was justified in view of the Company's questionable behavior in discharging Jeato, the failure (understandable in view of the fate of Jeato) of the Union to produce another observer, and the necessity to avoid "a situation in which potentially ineligible voters could have cast unchallenged ballots and thus could have affected the results of the election." The Company subsequently filed a request for review with the Board, alleging that the failure to fully comply with § 11338 had destroyed the "laboratory" conditions necessary in representation elections. The Board denied the request, finding that it raised no substantial issues warranting review.

The Certification proceedings thus completed, the Company nonetheless refused to negotiate and on July 20, 1971, the Union filed charges under § 8(a)(5) and (1) of the Act. The Re-

gional Director issued his Complaint and Notice of Hearing, the Company responded, and the General Counsel moved the Board for summary judgment. In response to the Board's Notice to Show Cause, in opposition to the motion for summary judgment, the Company renewed the § 11338 issue and for the first time contended that the Regional Director should have directed an evidentiary hearing in the representation proceeding. The Board on November 11, 1971, issued its Decision and Order finding that the Company had indeed violated § 8(a)(5) and (1) of the Act, and ordered appropriate corrective action.[4] Now, finally, the Board brings this action for enforcement of the Order.

## II. Discussion

The Employer argues that when the Board agent stated the challenges raised by the Union, in the absence of a Union observer, he contravened the Field Manual procedure, destroyed the neutrality so necessary in representation elections, and thus voided the results. To accede to such a line of reasoning we would be required to adopt a definition of the word "make," as used in § 11338, which would be much broader in scope than "originate" or "initiate"—one which would include stating challenges already raised by a party but unable to be "voiced" by the party due to its unexpected absence. We decline to adopt such a definition.

We disagree that favoritism or loss of Board neutrality is the concern to which § 11338 is aimed. Rather, we find the section directed at fostering a policy mandated by the Board's position in representation elections: namely,

---

3. The Field Manual is, the Board asserts, intended essentially for the guidance of Board personnel. The Manual states at § 10000 that it "is intended as a guide to the professional employee in the field with respect to case handling procedures." Later, in the same section, it further states: "Recognizing, however, that no guidelines or instructions can fully anticipate the many and varied situations en- countered by professional employees in their day-to-day work, the provisions and guidelines herein must be tempered in appropriate circumstances with responsible, professional judgment." Its provisions are not published in the Federal Register.

4. Schwartz Bros., Inc., 194 N.L.R.B. No. 13 (Nov. 15, 1971).

that the responsibility for initiating challenges on behalf of the parties lays with the parties rather than the Board agent. Thus, § 11338 directs itself to the question of whom the Board agent must challenge—those whose names are not on the eligibility list, and those whom the Board agent knows or has reason to know are ineligible to vote, so long as none of the parties first challenges—and mandates that in all other instances the challenges must be made by the parties. Here no challenge was made on behalf of the Union; rather, a challenge *made* by the Union was *stated* by the agent. "Make" in the sense of "make . . . on behalf of the parties" means "originate" or "initiate," and clearly here there was only a statement of an already existing challenge. We note that with regard to Jeato the Board agent stated a challenge made by the Company, just as he stated other challenges already made, originated, by the Union. We reject the Company's contention that the Board agent acted in contravention of § 11338.

■ We do recognize the weighty responsibility of the Board to maintain so-called "laboratory conditions" in the conduct of representation elections. General Shoe Corp., 77 N.L.R.B. 124, 127 (1948). Paraphrasing the words of Mr. Justice Frankfurter, impartiality must satisfy the appearance of impartiality.[5] Therefore, we feel that three guidelines should be established in instances similar to that *sub judice* where it becomes necessary for the Board agent to state a challenge in the absence of the originating party: (1) The Board agent must be completely impartial, and show no favoritism in any manner in stating the challenge. As the facts above amply demonstrate, neutrality was maintained in the manner in which the challenges were stated. (2) The Board agent must not resort to action similar to that involved herein except when necessitated by an unexpected occurrence. Just as the parties are expected to initiate their own challenges, so should they generally be required to state them. Clearly this requirement is met here. (3) If a charge is levied that the Board agent was not completely impartial, the burden shall be on the alleging party to prove the partiality. As is always the case, the challenging party has the burden of showing that the election was not fairly conducted, for it is not up to the Board to establish the validity of the election. NLRB v. Mattison Machine Works, 365 U.S. 123, 124, 81 S. Ct. 434, 5 L.Ed.2d 455 (1961). The single affidavit submitted by the Company was woefully inadequate in this respect.

■ At no stage in the representation proceedings did the Company demand an evidentiary hearing, and the simple assertion in the observer's affidavit that "[m]any of the seven challenges made by [the Board agent] occurred while other employees were in the voting area" did not, in our opinion, bring material and substantial facts into issue. 29 C.F.R. § 102.69(c).

The Order of the Board finding that Schwartz Brothers, Inc. engaged in unfair labor practices in violation of § 8(a)(5) and (1) of the National Labor Relations Act is accordingly supported by substantial evidence, Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and entitled to enforcement.

Judgment accordingly.

---

5. *See* Offutt v. Unted States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954):

"Therefore, justice must satisfy the appearance of justice."