**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARLTON McLENDON FURNITURE CO., INC., Respondent.**

**No. 73–1598.**

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1974.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Charles M. Paschal, Jr., Director, Region 15, N. L. R. B., New Orleans, La., Allen H. Feldman, N. L. R. B., Washington, D. C., for petitioner.

C. Lash Harrison, John Bacheller, Jr., Atlanta, Ga., for respondent.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This application for enforcement of a National Labor Relations Board order comes to us after the usual procedural journey has been made. In November 1971, the United Brotherhood of Carpenters and Joiners, Southern Council of Industrial Workers, AFL–CIO (Union) filed a petition for a representation election pursuant to § 9 of the National Labor Relations Act, aimed at Carlton McLendon Furniture Company (Company). The Regional Director of the Board directed an election which ended with 41 votes for the Union, 38 votes against the Union, and 13 challenged ballots, out of approximately 105 eligible voters. After the challenges to ballots had been considered by the Regional Director, the final tally was 44 for the Union and 39 against. The facts sur-

rounding that election furnished the foundation for the Company's continued resistance.

Within the twenty-four hour period immediately prior to the election, the Union passed out to the employees of the Company a handbill stating that the Union had won a representation election at another company, Bes-Pak, by a vote of 34 to 33. In fact, the election result was 32 for the Union, 33 against, and two challenged ballots.[1]

The Union's campaign to organize the Company's employees was conducted concurrently with its effort to organize the Bes-Pak employees. Some of their organizing meetings were held jointly, and it is undisputed by all that the Union was conducting a joint campaign. The Company contended before the Board and argues here that the handbill constituted a material misrepresentation which destroyed the required laboratory conditions and which rendered the election invalid.

Additionally, the Company objects to conduct by the Union observer in the polling area which, it alleges, interfered with the laboratory conditions necessary to a free and fair election by creating an impression that the Union and not the Board was in charge of the election. During the election, and in the presence of six employees in all who were standing in the voting line, the Union observer turned four of these employees away with the demonition "you, you, you, and you can't vote." The observer gave no reason for his action, and the Board agent then present did not intercede. The two employees remaining in the line proceeded to cast their ballots, as the four challenged employees left the voting area. The four returned shortly with a Company payroll clerk whose conversation with the Board agent resulted in the four employees voting without further challenge.

The Company argued before the Regional Director and before us that either or both of these objections require that the election be set aside, or alternatively that the Board should be required to hold a full hearing in the face of the Company's prima facie showing of substantial election irregularities. On the basis of an *ex parte* administrative investigation, the Regional Director rejected all of the Company's objections,[2] having found that they presented no substantial or material issues with respect to conduct affecting the results of the election. Undaunted, the Company filed with the Board a request for review of the regional director's disposition of its objections. The Board denied this request in a four-line telegram which concluded that the Company's request "raises no substantial issues warranting review." A motion for reconsideration of the Board's denial of the Company's request for review was likewise denied "as lacking in merit."

Shortly thereafter, the Union filed unfair labor practice charges alleging that the Company had refused to bargain in violation of §§ 8(a)(1) and (5) of the Act, complaint issued, the Company answered by denying the validity of the Union's certification, the Board's general counsel moved for summary judgment, and the Board granted the motion, ordering the Company to bargain collec-

---

1. The Bes-Pak election was ultimately set aside, and in the subsequent election, the Union lost by a final vote of 67 against the Union, 58 for.

2. The Company presented two other objections to the Regional Director: (1) that a supervisor assisted the Union in its organizational efforts, and (2) that the Union caused a crowd of nonemployees to assemble at the plant entrance one hour before the election to voice their approval of the Union, and caused a rumor to be circulated among the eligible voters that the crowd would "get" any employee who voted against the Union. The Company also contended that all four of its objections, considered cumulatively, destroyed requisite laboratory conditions. The Regional Director found no merit in these contentions, and the Board agreed. The Company has not sought review of objections (1) and (2), and thus we have no occasion to consider them.

tively with the Union. The case has inexorably found its way to this Court.[3]

■ It will not end with us today, however, for although we do not set the election aside, we deny the Board's application for enforcement and remand for a full adversary hearing to determine the extent to which the challenged Union conduct affected the results of the election.

■■ We begin our analysis of the Company's contentions by noting that Congress has vested the Board with broad discretion in dealing with matters relating to representation proceedings. N. L. R. B. v. Muscogee Lumber Co., Inc., 5th Cir. 1973, 473 F.2d 1364, 1366. And thus, before this court can invalidate an election, the party objecting to the enforcement action must prove that union misconduct materially affected the results of the election, and its proof must be such as to show that the Board's findings to the contrary lack substantial evidentiary support. N. L. R. B. v. Monroe Auto Equipment Co., 5th Cir. 1972, 470 F.2d 1329, 1333; N. L. R. B. v. Golden Age Beverage Co., 5th Cir. 1969, 415 F.2d 26, 30; N. L. R. B. v. White Knight Manufacturing Co., 5th Cir. 1973, 474 F.2d 1064, 1067.

■ Even though the objecting party is not entitled to have the election set aside, he may still have a right to a full adversary hearing. Rules promulgated by the Board require an investigation if post-election objections are filed. See 29 C.F.R. § 102.69. The Regional Director is permitted to make an *ex parte* investigation, but if substantial and material factual issues are found to exist, a full hearing is required. N. L. R. B. v. Air Control Products of St. Petersburg, Inc., 5th Cir. 1964, 335 F.2d 245, 249; N. L. R. B. v. Skelly Oil Co., 8th Cir. 1973, 473 F.2d 1079, 1083. A full hearing is required in such cases, not because any statute commands it, but because the Board has promulgated rules requiring a hearing in those circumstances. N. L. R. B. v. Overland Hauling, Inc., 5th Cir. 1972, 461 F.2d 944. And the determination of whether the Company has raised a substantial and material factual issue is "a question of law and ultimately a question for the courts." Luminator Division of Gulfton Industries, Inc. v. N. L. R. B., 5th Cir. 1972, 469 F.2d 1371, 1374.

■■ In order to secure a hearing, the objecting party must present a prima facie case warranting setting the election aside. United States Rubber Co. v. N. L. R. B., *supra,* 373 F.2d at 606. This means that there must be "specific evidence of specific events from or about specific people" in support of allegations having a basis in law sufficient to overturn the election. N. L. R. B. v. Douglas County Electric Membership Corp., 5th Cir. 1966, 358 F. 2d 125, 130. As to how specific the evidence must be, the Court in *United States Rubber Co., supra,* said that the objections must not be " 'nebulous and declamatory assertions, wholly unspecified,' nor equivocal hearsay." *Id.,* 373 F.2d at 606.[4] We find that the present record is not conclusive as to the impact of the handbill and the Union observer's conduct, that a substantial and material

---

3. The § 8(a)(1) and (5) cases are legion, and the reasoning behind the tortuous path to this Court has been explained many times before. *N. L. R. B. v. Golden Age Beverage Co.,* 5th Cir. 1969, 415 F.2d 26, 28; N. L. R. B. v. Air Control Products of St. Petersburg, Inc., 5th Cir. 1964, 335 F.2d 245, 247 fn. 1; United States Rubber Co. v. N. L. R. B., 5th Cir. 1967, 373 F.2d 602, 604; Home Town Foods, Inc. v. N. L. R. B., 5th Cir. 1969, 416 F.2d 392, 393 fn. 1.

4. Remand for hearings on post-election objections has been deemed inappropriate where the operational facts are undisputed and the matter presented is a question of law, N. L. R. B. v. Cactus Drilling Co., 5th Cir. 1972, 455 F.2d 871, 873, fn. 10, or where the effect of the misconduct is apparent on the record, National Cash Register Co. v. N. L. R. B., 5th Cir. 1969, 415 F.2d 1012, 1015. *See N. L. R. B. v. Monroe Auto Equipment Co., supra,* 470 F.2d at 1331, fn. 2; N. L. R. B. v. Golden Age Beverage Co., *supra,* 415 F.2d at 33, fn. 6.

factual issue as to impact exists, and that the Company has presented a prima facie case with sufficient specificity to warrant a full adversary hearing. The reasons for our holding and for our conclusion that the Board's findings to the contrary are unreasonable are set out below.

### The Handbill

This Court has devised the following test for evaluating questionable campaign communications: (1) whether there has been a misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth or who had special knowledge of the facts; (3) whether the other party had adequate opportunity to reply and to correct the misrepresentation; and (4) whether the employees had independent knowledge of the misrepresented fact, so that they could effectively evaluate the propaganda. N. L. R. B. v. Southern Foods, Inc., 5th Cir. 1970, 434 F.2d 717, 720; N. L. R. B. v. Cactus Drilling Corp., 5th Cir. 1972, 455 F.2d 871, 874.

The Regional Director found:

. . . that while the results of the Bes-Pak election may have been of some importance to Employer's employees, those results would not seem to be so material as to require complete certainty that employees were correctly informed of those results, that in view of the fact that Petitioner had unfair labor practice charges pending on behalf of the two challenged voters at Bes-Pak, its representation does not constitute a substantial departure from what it believed

the truth to be, and that Employer had an ample opportunity to effectively reply to the handbill and did, in fact, reply by posting the official tally of ballots near to the employees' time-clock . . .

And thus, the Regional Director concluded, the handbill did not constitute grounds for setting the election aside. The Board summarily concluded that the Company was attempting to relitigate the issues raised and determined in the previous representation proceeding in defiance of the Board's nonrelitigation rule, and thus affirmed the Regional Director's findings. In our opinion, the Regional Director did not apply the correct legal standard in part, and in part made findings which have absolutely no support in the record.

First, we believe that the message expressed on the handbill was a misrepresentation and that it was a material misrepresentation. The sole subject of the handbill was the successful election at Bes-Pak. Both companies, though separately owned, were the subjects of a joint organizing effort. The employees of both companies met at joint union organizing meetings. If we accept the maxim that in union there is strength, it strains our credulity to believe that Company employees would not be affected by how employees at another company had voted with respect to the same union, or how they believed employees at another company voted. We find that this misrepresentation could have affected the outcome of this election, and is therefore material.[5]

Second, since the handbill was prepared by the same Union which attempt-

5. We note here that the Regional Director's finding that the misrepresentation does not constitute a substantial departure from what it believed the truth to be has no support in the record. But more important, whether the Union intended to misrepresent a material fact has never been a part of the test. Hollywood Ceramics Co., 140 NLRB 221, 51 LRRM 1600 (1962); see N.L.R.B. v. Houston Chronicle Publishing Company, 5th Cir. 1962, 300 F.2d 273, 278. The Board now admits that the Regional Director was incorrect in concluding that the Union had unfair labor practice charges pending at the time the handbill was distributed. The Union did not file unfair labor practice charges as to two Bes-Pak employees until two days after the Company election. Even if intent were a proper consideration, which it is not, we cannot understand how it could help the Union's position, for we would assume, without evidence to the contrary, that the Union would not have prepared this handbill with only one message unless it intended the handbill to have a material effect on the election.

# 63

ed to organize Bes-Pak employees, the Union was in an authoritative position to know the truth. That much is not disputed by any of the parties.

Third, we find that the Company did not have an adequate opportunity to reply and to correct the misrepresentation. The handbill was not distributed until the eve of the election, even though the Bes-Pak election had occurred a week before. The Company discovered the Union handbill on the day of the election and then placed an official NLRB vote tally of the Bes-Pak election on the bulletin board near the timeclock. At least one Company supervisor attempted to explain to several employees that the handbill was in error. But there is no evidence in the record to indicate that the official tally posted by the Company was read by all or even a majority of the employees, or that the Company supervisor was able to reach more than a few of the Company's employees with the truth.

An important factor in our determination is that the distribution of the handbill was "apparently timed to deprive the employer of the opportunity effectively to rebut the misrepresentations." Walled Lake Door Co. v. N. L. R. B., 5th Cir. 1973, 472 F.2d 1010, 1011. While the Company may have had time to frame a reply, there was no effective opportunity to correct the misrepresentation. N. L. R. B. v. Cactus Drilling Corp., *supra*, 455 F.2d at 875. We fully support the Board's reluctance to police and censor the statements of parties to a certification election. N. L. R. B. v. Southern Foods, Inc., *supra*, 434 F.2d at 719. But that reluctance must give way where the employees' freedom to make an unfettered choice between the competing factions is tainted.

In Luminator Division of Gulfton Industries, Inc. v. N. L. R. B., *supra*, we found that a company's opportunity to reply to misrepresentations contained within a leaflet distributed twenty-six hours before the election "certainly raised a question of material fact," thus

necessitating a hearing.[6] In N. L. R. B. v. Houston Chronicle Publishing Company, 5th Cir. 1962, 300 F.2d 273, a union letter containing material misstatements was circulated two days before the election. The Board held that the employer's answer by telegram was sufficient. We disagreed and denied enforcement of the order noting that the requisite laboratory conditions had been destroyed by the propaganda. On the record in this case, there is not substantial evidence to support the conclusion that the Company had an adequate opportunity to reply and to correct the misrepresentation.

Fourth, the record indicates that there was a substantial and material factual issue as to whether the employees possessed the requisite independent knowledge to evaluate the propaganda effectively. Having dispensed with the Company's objection on other grounds, the Regional Director made no findings as to whether the employees had independent knowledge of the misrepresented fact. In his *ex parte* investigation, the Regional Director apparently received affidavits from two witnesses who had "heard" that the Union had lost at Bes-Pak before receiving the handbill; a third witness stated that she knew the results of the Bes-Pak election only by the Union handbill. We do not believe that the hearsay information received by two employees rises to the level of "independent knowledge" contemplated by the test. On this record, we would be forced to endow all of the Company employees with "extraordinary powers of perspicacity" in order to sustain the Board's position. We do not choose that course. N. L. R. B. v. Bill's Institutional Commissary Corp., 5th Cir. 1969, 418 F.2d 405, 407.

### Union Observer's Conduct

 The Regional Director concluded that since the Union observer's conduct

. . . was an isolated incident involving only six voters out of 92 vot-

6. *See also* United States Rubber Co. v. N.L.R.B., *supra*, 373 F.2d at 606.

ers who cast ballots, that [the observer] did not electioneer, that the four persons who were initially denied the opportunity to vote were allowed to vote unchallenged after a short delay, and that, therefore, the Board Agent remedied the questionable conduct,

the Company's objection does not warrant setting the election aside. We agree that at this time the Company's objection to the Union observer's conduct, standing alone, does not warrant setting the election aside. But we hold that this "questionable conduct" should be considered together with the handbill in a full hearing, for the conduct to which the Company objected must be considered cumulatively rather than as isolated incidents. Home Town Foods, Inc. v. N. L. R. B., 5th Cir. 1969, 416 F. 2d 392, 397.

Were the Union observer's conduct the only objection raised by the Company, we would not remand for a full hearing. N. L. R. B. v. Schwartz Brothers, Inc., D.C.Cir. 1973, 475 F.2d 926, 930. It appears that only two votes could have been affected by the Union observer's conduct, assuming that human nature would compel the four challenged employees to vote against the Union in any case. Those two votes would be insufficient to change the outcome of the election. But considered with the impact of the handbill, sufficient votes may have been affected to warrant setting the election aside. That can only be determined by a full hearing.

Indeed, we attach some importance to the fact that a change of three votes would have changed the outcome of the election. We have noted before that in close elections, "any minor violation of the Act cannot be dismissed summarily for it could have swayed the crucial vote." N. L. R. B. v. Overland Hauling, Inc., supra, 461 F.2d at 946. In N. L. R. B. v. Gooch Packing Co., Inc., 5th Cir. 1972, 457 F.2d 361, 362, this Court wrote:

. . . In close vote election situations the Board is required to

particularly and carefully scrutinize charges which in other cases would constitute immaterial or insubstantial objections to the election and, when the existence of hard evidence of irregularities is supplied, a full hearing to get at the truth should be accorded

. . .

### Conclusion

In many ways, this case is similar to Walled Lake Door Co. v. N. L. R. B., supra, 472 F.2d 1010. There the union had mailed a letter to company employees so that it would reach them only shortly before the election. The letter recited a long list of benefits enjoyed by the employees at other unionized plants of the same company and added in a postscript:

"P.S. Join hands with employees of the 4 Walled Lake plants who are represented by unions."

Only two plants were actually unionized. By a vote of 26 to 22, the union won the election; the company's objections to the election were rejected after an ex parte investigation; the Board then filed a complaint against the company for refusal to bargain; the company asked for a hearing to develop the case of misrepresentation; and the Board denied the request and granted summary judgment against the company.

This Court denied enforcement of the Board's order on the ground that substantial and material last-minute misrepresentations had invalidated the election and resulting certification. There the facts were undisputed, and the impact was fully evident from the record. A hearing would have been a senseless formality. But the evidence here is not so conclusive, and substantial and material factual issues as to the impact of Union conduct still exist. Consistent with what we have said today, the Board should conduct a full hearing in order to determine the extent to which the challenged conduct affected the results of the election.

Remanded with directions.