**BEAIRD–POULAN DIVISION, EMERSON ELECTRIC COMPANY,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Union, United Automobile, Aerospace and Agricultural Workers of America, UAW, Intervenor-Respondent.**

**No. 77–1518.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1978.

Decided March 2, 1978.

D. Michael Linihan (on brief), McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., argued, for petitioner; Ralph E. Kennedy, St. Louis, Mo., on brief.

John S. Irving, Gen. Counsel, John E. Higgins, Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John H. Ferguson and Ellen P. Spangler (argued), Attys., N.L.R.B., Washington, D. C., on brief, for respondent.

Lynn A. Agee, Youngdahl, Larrison & Agee, Memphis, Tenn., on brief, for intervenor-respondent.

Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.

ROSS, Circuit Judge.

Beaird-Poulan Division, Emerson Electric Company (the company), petitions this court for review of an order of the National Labor Relations Board finding that it is engaging in unfair labor practices within the meaning of §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1); ordering it to cease and desist from refusing to bargain collectively with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the union); and ordering it to take certain affirmative action. The Board cross-petitions for enforcement of its order. The union was permitted to intervene and it also requests that the Board's order be enforced.

This case arises out of an intense and vigorous representative campaign and a close election. On March 19, 1976, the union filed a petition seeking certification as the bargaining representative of the production and maintenance employees at the company's Shreveport, Louisiana,[1] plant. An election was held on April 30, 1976, pursuant to a stipulation for certification upon consent election, and the union won by the narrow margin of 402–383.

The company filed timely objections to alleged misconduct by the union which it contends affected the results of the election. After investigating, but without conducting a hearing, the Regional Director issued his report recommending that the objections be overruled and the union be certified. Filing timely objections to the Regional Director's report, the company requested a hearing. However, on November 23, 1976, the Board denied the hearing request, adopted the Regional Director's findings, and certified the union.

Thereafter, the company refused the union's bargaining request and the union filed an unfair labor practice charge with the Board. On May 25, 1977, the Board granted the General Counsel's motion for summary judgment, finding that the company had presented no material facts which had not previously been determined.

▆ The company alleges that the following misconduct by the union impermissibly affected the outcome of the election:

1. The Union conducted a campaign of fear and intimidation, including predictions of violence and economic detriment to employees opposed to the Union which permeated the entire atmosphere in such a manner as to destroy the laboratory conditions required by the Board in its election proceedings.

2. The Union made substantial misrepresentations with respect to the compensation, stock options and benefits of officials and supervisors of the Employer.

3. The Union made substantial misrepresentations with respect to its alleged contractual relationship with Huck Manufacturing Co. of Waco, Texas. The Union misrepresented wage rates being paid employees at Huck Manufacturing Co.

4. Union supporters were permitted to stay in the polling area after casting their ballots and campaigning was conducted during the election in violation of the Board's "Milchem Rule".

1. Beaird-Poulan Division, Emerson Electric Company is a Missouri corporation with head-quarters in St. Louis, so this court has jurisdiction.

5. By the above and other acts and conduct, the Union precluded the employees from expressing their free choice in a non-coercive atmosphere.

It contends, in light of these allegations, that the Board erred in concluding that the election should not be set aside. Alternatively, it requests a hearing by the Board to resolve these issues.

Although we make no factual findings with regard to the alleged misconduct, we do find that the company presented specific allegations of misconduct sufficient to warrant setting aside the election, if true, and is entitled to an evidentiary hearing. We remand the case to the Board and order that a hearing be held.

In its ruling on the General Counsel's motion for summary judgment the Board correctly stated the constitutional and statutory standard to be met before a party is entitled to a hearing on its objections to the conduct of a representative election. To be entitled to a hearing, the requesting party must raise substantial or material issues which, if proved, would warrant setting aside the election. *NLRB v. Modine Manufacturing Co.,* 500 F.2d 914, 916 (8th Cir. 1974), and cases cited therein. *See also Argus Optics v. NLRB,* 515 F.2d 939, 945–46 (6th Cir. 1975); *NLRB v. Carlton McLendon Furniture Co., Inc.,* 488 F.2d 58, 61 (5th Cir. 1974); *NLRB v. Skelly Oil Co.,* 473 F.2d 1079, 1083 (8th Cir. 1973). The Board found, however, that the company failed to raise such substantial or material issues in the underlying representation case. We disagree.

The company submitted sworn affidavits of company employees describing incidents of violence and intimidation,[2] which, if true, warrant the setting aside of the election. *Cf. Wilkinson Manufacturing Co. v. NLRB,* 456 F.2d 298, 303 (8th Cir. 1972). The Regional Director's report indicates that he talked with the employees involved and re-

solved factual disputes and credibility conflicts in favor of the union. However, this court has held that the company must be afforded the opportunity to produce evidence that might rebut testimony of union witnesses or at least subject those witnesses to the "cleansing rigors of cross-examination." *NLRB v. Commercial Letter, Inc.,* 455 F.2d 109, 113–14 (8th Cir. 1972). That opportunity was not afforded Beaird-Poulan.

Similarly, the company has presented *prima facie* evidence of other misconduct sufficient to set aside the election, if true. *Cf. Hollywood Ceramics,* 140 N.L.R.B. 221 (1962) (unfair comparison of wage rates on the eve of the election); *Argus Optics v. NLRB, supra,* 515 F.2d 939 (misrepresentation concerning the extent to which employees share equitably in the products of their labor); *Milchem, Inc.,* 170 N.L.R.B. 362 (1968) (improper electioneering during the course of the election). The allegations cannot be rejected by the Board without affording the company a hearing on the issues. *See Argus Optics v. NLRB, supra,* 515 F.2d 939; *NLRB v. Skelly Oil Co., supra,* 473 F.2d 1079. The company has presented serious, substantial allegations, not "nebulous and declamatory assertions, wholly unspecified." *See United States Rubber Co. v. NLRB,* 373 F.2d 602, 606 (5th Cir. 1967), *quoting Fay v. Douds,* 172 F.2d 720 (2d Cir. 1949).

In our opinion the company's objections lead to the conclusion that substantial and material factual issues sufficient to warrant setting aside the election may exist and an evidentiary hearing is required.

The cross-application of the Board for enforcement of its order is denied and the case is remanded for a hearing on the alleged misconduct in the representative election.

---

2. Examples of alleged violence and intimidation include: a statement that one employee brandished a gun after receiving an anti-union handbill; a threat to one employee that her "kids could come up missing or get hurt;" a union supporter forcing another employee's car off the road; and an employee's windows broken after he refused to act as a union in-plant organizer.