**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**COMPUTER SCIENCES CORPORATION, Applied Technology Division, Aerospace Systems Center, Respondent.**

**No. 78–2376**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate Gen. Counsel, Paul Spielberg, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert V. Allen, Acting Associate Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Mitchell, Silberberg & Knupp, J. Nicholas Counter, III, William L. Cole, Los Angeles, Cal., for respondent.

Before CLARK, GEE and HILL, Circuit Judges.

PER CURIAM:

On February 7, 1977, the Office and Professional Employees International Union (the Union) filed a petition for a representation election at the Computer Sciences Corporation's (the Company) facility in Huntsville, Alabama. The Regional Director of the National Labor Relations Board scheduled the election for April 21, 1977, and established a bargaining unit that excluded computer programmers. During the pre-election conference, the Union announced that it would challenge the right of Vernon Haga, a senior production coordina-

tor, to participate in the election on the ground that he was engaged in programming. The Company did not then state whether it proposed to challenge any of the voters. However, prior to the opening of the polls, the Company's attorney gave notice that he intended to challenge the three remaining senior production coordinators whom the Union had not challenged, contending that these employees might also have some programming duties. In response to this notice, the NLRB Agent in charge of the election suggested that the Company's challenges were asserted solely because of the Union's decision to challenge Haga.

After the voting began, one of the persons the Company planned to challenge appeared at the polling place. The Company's observer challenged the employee, but when requested to state the grounds for the challenge, the observer replied that he did not know the reasons and that he was told to do so by the Company's attorney. The Agent questioned the employee about his duties, and then permitted him to vote an unchallenged ballot.[1] The other two employees on the Company's challenge list appeared later that day, and the Company also challenged them, this time asserting that they were programmers. The Agent asked these two employees whether they performed any programming work, and they replied that they did not. The Agent then allowed them to vote unchallenged ballots. When Haga arrived at the polling area, the Union challenged him, and the Agent asked him whether he had programming duties. Haga stated that he did do some programming, and the Agent gave him a challenged ballot. The Union won the election 48 to 44. Five challenged ballots were cast.

The Company subsequently filed objections to the conduct of the election with the NLRB's Regional Director. The Director recommended that the Union be certified as the employee's representative. The Company then filed exceptions to the Regional Director's report with the NLRB. The Board adopted the Regional Director's report and certified the Union. The Union later filed an unfair labor practice charge with the Board, contending that the Company had refused to bargain with the Union. The Company denied the Union's allegations and asserted that the Board's decision to certify the Union was erroneous. The Board granted summary judgment against the Company. The Company appeals that decision.

The Company contends that the Agent's refusal to allow its challenges denied its right to a hearing on the merits of the challenge. It asserts that the Regional Director and the NLRB will hear challenges to the eligibility of voters only if those voters use challenged ballots, and that the Agent's decision not to require challenged ballots prevented the Regional Director and the NLRB from considering the eligibility of the voters the Company challenged.

In assessing the merits of the Company's assertions, it is necessary to examine the responsibilities of the Board's Agent for administering the challenge system. The Agent should, upon being notified of a challenge to a voter's eligibility, require the use of a challenged ballot in most instances. The Agent should not attempt to resolve factual controversies surrounding the eligibility of the voters; the challenge system was designed to leave the responsibility for determining eligibility in the hands of the Regional Director and the Board. *NLRB v. West Texas Utilities Co.*, 214 F.2d 732, 742 (5th Cir. 1954). However, if, on the facts known to the Agent, the challenge is utterly without merit, a challenged ballot need

---

1. If an agent gives a voter a challenged ballot, the employee is allowed to vote, but this ballot is kept separate from those of unchallenged voters. In the event that it is subsequently determined that the challenge was unmeritorious, the challenged ballot is counted with the unchallenged ballots. If the challenge proves meritorious, then the challenged ballot is not considered. When an elector casts an unchallenged ballot, it becomes an unrecognizable part of the entire box of ballots.

not be used. *Farmers Union Creamery Association*, 122 N.L.R.B. 151 (1958).

 If the Agent makes a mistake in determining that a particular challenge is frivolous, then that error can be asserted before the N.L.R.B. in the same way that other errors in the election procedures may be challenged. *See N.L.R.B. v. Schwartz Brothers, Inc.*, 154 U.S.App.D.C. 342, 475 F.2d 926 (1973); *Delta Drilling Co. v. N.L.R.B.*, 406 F.2d 109 (5th Cir. 1969). The burden is on the petitioning party to show that an error was made, *Southwestern Portland Cement Co. v. N.L.R.B.*, 407 F.2d 131, 134 (5th Cir.) *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969), and, in the case where an agent refuses to require a voter to cast a challenged ballot, the petitioner must demonstrate that his challenge was meritorious. When the facts indicate that a challenged ballot should have been used, the election results must be overturned if the error could affect the outcome of the election.

 In this case, it is important to note that the Company, in its petitions to the Regional Director and to the Board, has asserted only that the Agent erred in not requiring the use of challenged ballots; it has not asserted that the individual employees it challenged were indeed ineligible to vote. Thus, the Company has never contended that the agent reached an erroneous conclusion on the merits of its claim. The duties of its employees are a matter peculiarly within the Company's knowledge, and yet, there is no indication in the record that the Company ever attempted to determine or demonstrate what the duties of the challenged employees were. The Company cannot complain that it was denied a hearing on the eligibility issue when it has never attempted to show that its challenges were meritorious.

The actions of the Agent in denying the challenges do not bar enforcement. Upon being notified of the challenges, the Agent inquired into the duties of each employee. Based on the answers the employees gave, he concluded that the three employees challenged by the Company were eligible to vote and that the eligibility of the person challenged by the Union was not in doubt. In the absence of any proof produced to support the challenges, it was not improper for the Agent to assume that the employees would respond truthfully to questions concerning the work that they did. The Company has never offered any employment records or testimony to contradict that assumption. It was incumbent upon the Company to demonstrate that there was some merit to its challenges. Since it has failed to do so, invalidation of the election is not required.

The Company also contends that the election should be invalidated since the Agent exhibited his pro-union feelings to the voters by suggesting that the Company's challenges were frivolous and by denying these challenges. An Agent does have a duty to maintain the appearance of impartiality in conducting the election, *N.L.R.B. v. Schwartz Brothers, Inc.*, 154 U.S.App.D.C. 342, 346, 457 F.2d 926, 930 (1973). In this case, there is no indication in the record that any voter even observed the colloquy between the Agent and the Company's attorney regarding the challenges. Moreover, the administration of the challenge system is an essential part of the Agent's job, and the conduct of the Agent here in disallowing the challenges did not demonstrate partiality toward the Union.

ENFORCEMENT GRANTED.