**MONROE MANUFACTURING COMPANY, DIVISION OF CONTINENTAL OIL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 25421.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1968.

Wm. J. Threadgill, Taylor B. Smith, Threadgill & Smith, Columbus, Miss., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Charles N. Steele, Warren M. Davison, Leonard M. Wagman, Attys., N.L.R.B., Washington, D. C., for respondent.

Before COLEMAN and MORGAN, Circuit Judges, and HUNTER, District Judge.

LEWIS R. MORGAN, Circuit Judge:

This action is before the Court upon the petition of Monroe Manufacturing Company, Division of Continental Oil Company, to review and set aside an order of the National Labor Relations Board issued against the Company on October 31, 1967, pursuant to Section 10 (c) of the National Labor Relations Act, as amended. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America filed a representation petition seeking to become the representative of certain truck drivers employed by the petitioner. The regional director found that the truck drivers constituted a functionally distinct unit for purposes of collective bargaining. Petitioner filed a timely request to review this unit determination, contending that there should be no separate unit composed only of truck drivers. This request was denied by the Board and the election was held. As a result of a 7 to 5 vote in favor of the Union, it was certified as the collective bargaining representative of the truck drivers. Petitioner immediately filed objections contesting the validity of the election, alleging that certain acts of coercion influenced the outcome.

These objections concern an incident which occurred on the morning of February 23, 1967, the date of the election. Philip W. Morse, plant manager of Monroe Manufacturing Company, testified by affidavit that he was informed at approximately 7:30 a. m. on February 23, 1967, that one of the drivers in the unit, a white person, named James Odom, was seen pointing his finger in a threatening manner at another driver, a colored employee, Johnnie House. Subsequent thereto and after the election, Morse discussed this matter with House, and the latter stated that he was informed by Odom just before he went to vote that "You had better vote for the Union". House informed Morse that this action on the part of Odom caused him to change his vote from "No" to "Yes", because he was afraid that something might happen to him or his family while he was away on a trip. House further informed Morse that he wanted to talk with him the day before the election, but he was afraid someone would see him. When asked what he had wanted to talk about, House responded that he had heard that a Negro plant worker had been killed in Natchez, Mississippi, and that this had frightened him about the up-coming election because of some things that the other drivers had told him.

In his affidavit, Johnnie House testified that when he arrived at the Company's gate house on the morning of the election, he was undecided about voting. When drivers Odom and James Johnson approached him, he told them he was not going to vote because he was "scared" and did not know what to do.

According to House, he did not "know what it was all about", nor did he fear that any harm would come to him. House stated further that Odom advised him to vote "Yes" but did not do so in a threatening manner. In the course of his explanation, Odom pointed his finger at an imaginary ballot, and did not point at House. According to House, he voted free of fear, was never threatened by Odom or any other driver, and did not tell Morse that he intended to vote "No" but voted "Yes". House also stated that he intended to speak to Morse prior to the election because the prospect of voting was new and confusing to him, and he intended to inquire whether voting was compulsory. James Odom's affidavit corroborated House's.

Petitioner's objections to the election based upon this alleged misconduct was overruled by the regional director and a subsequent request for review by the Board was also denied without a hearing. A month after the election and certification, General Counsel of the Board issued a complaint against petitioner, alleging that he had failed to bargain with the Union. These allegations were admitted except those which charged petitioner with unfair labor practices. It is the petitioner's position that the Union's certification was invalid on the grounds that the unit was improper, and that the Company's objections to conduct affecting the results of the election should not have been overruled without a hearing.

 As to petitioner's contention that the unit as determined by the regional director was improper, we find no valid basis for this objection. This Court has

been called upon on several occasions to determine issues fundamentally the same as that presented by this appeal. On June 5, 1968, Judge Dyer writing for the Court in National Labor Relations Board v. Davis Cafeteria, Inc., 396 F.2d 18 (5 Cir., 1968), was confronted with this same question. In formulating the rule as developed by earlier cases,[1] Judge Dyer observed:

"We recognize that in determining appropriate bargaining units 'a wide discretion has been vested in the Board', N.L.R.B. v. Belcher Towing Co., 5 Cir., 1960, 284 F.2d 118, 120, and that this court may not 'displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo', Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456."

In this case, the record considered as a whole clearly shows that the Board has not abused its discretion, its decision as to the appropriate unit is supported by substantial evidence in the record or by judicial decisions, and its order designating the truck drivers as a proper unit must, therefore, stand.

However, petitioner's opposition to the dismissal of his objections to the election without a hearing before the Board seems well taken. We hold that the action of the Board is arbitrary and unreasonable because under the circumstances of the case there were material disputed facts which required a hearing on the merits as provided for by Section 10(b) and 10(c) of the Act (29 U.S.C. § 160).[2]

---

1. N. L. R. B. v. Smythe, 212 F.2d 664 (5 Cir., 1954); N. L. R. B. v. Dallas Concrete Co., 212 F.2d 98 (5 Cir., 1954); Texas Pipe Line Co. v. N. L. R. B., 296 F.2d 208 (5 Cir., 1961).

2. The applicable provisions in pertinent part read as follows:
 (29 U.S.C. § 160(b) and (c))
 (b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes,

shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person

The regional director is required by 29 C.F.R. § 102.69(c)[3] to grant a hearing only when it appears that substantial and material factual is-

against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28.

(c) The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: *Provided,* That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: *And provided further,* That in determining whether a complaint shall issue alleging a violation of subsection (a) (1) or (a) (2) of section 158 of this title, and in deciding such cases, the same regulations and

rules of decision shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.

3. The pertinent part reads as follows: " * * * If the election has been conducted pursuant to a direction of election issued following any proceeding under § 102.67, the regional director may (1) issue a report on objections or challenged ballots, or both, as in the case of a consent election pursuant to paragraph (b) of this section, or (2) exercise his authority to decide the case and issue a decision disposing of the issues and directing appropriate action or certifying the results of the election. In either instance, such action by the regional director may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer."

sues exist which can be resolved only after a hearing. This principle has been recognized and followed in numerous cases before this Court.[4] The Board denies that any substantial factual issues exist since, even conceding that pressure was exerted on House, only one vote was affected. In support of this view, the Board cites Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933 (5 Cir., 1959), which approves the principle that individual isolated verbal excuses do not warrant setting an election aside. While this should be a rule of thumb in many cases, it is not applicable here. In view of the close vote and the small number of votes cast, one individual vote could make the difference in the election. As stated in Manning, Maxwell and Moore, Inc. v. N.L.R.B., 324 F.2d 857 (5 Cir., 1963):

> "Where there was no proof that conduct was attributable to the union and where the number of voters threatened were insufficient to affect the outcome of the election, it can hardly be said that the Director acted arbitrarily in upholding the election."

In the case before us, the vote was 7 to 5 in favor of the Union. Had Mr. House voted "No", then there would have been a tie vote and the Union would have lost. Mr. House's vote then became the "swing" vote and definitely affected the outcome of the election. Therefore, any decision as to the coercion or the lack of it is a crucial, factual determination and should be resolved only after a hearing. Since no hearing was held, petitioner cannot be guilty of an unfair labor practice. To borrow the words of Judge Brown writing for the Fifth Circuit, "It is clear that Section 8(a) (5) orders which rest on crucial factual determinations made after ex parte investigations and without hearing cannot stand". N.L.R.B. v. Air Control Products of St. Petersburg, Inc., 335 F.2d 245 (5 Cir., 1964).

The decision of the National Labor Relations Board is affirmed as to the question of the truck drivers being an appropriate bargaining unit. As to the issue of the objections to the election by the Company, the order of the National Labor Relations Board is vacated and the controversy is remanded to the Board for a full hearing.

In accordance with the views herein expressed, enforcement is granted in part and denied in part.

---

4. Home Town Foods, Inc. v. N. L. R. B., 379 F.2d 241 (5 Cir., 1967); N. L. R. B. v. West Texas Utilities Co., 214 F.2d 732 (5 Cir., 1954); N. L. R. B. v. Sidran, 181 F.2d 671 (5 Cir., 1950).