**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MUSCOGEE LUMBER CO., INC., Respondent.**

No. 72–2549

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 2, 1973.

---

* Rule 18, 5 Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al. 5 Cir. 1970, 431 F.2d 409 Part I.

Marcel Mallet-Prevost, Asst. General Counsel, N. L. R. B., Washington, D. C., Walter C. Phillips, Director, Region 10, N. L. R. B., Atlanta, Ga., for petitioner.

Lee H. Henkel, Jr., Mark R. Youmans, Columbus, Ga., for respondent.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order that the respondent, Muscogee Lumber Co., Inc., cease and desist from violating sections 8(a)(5) and 8(a)(1) of the Act, 29 U. S.C. §§ 158(a)(5), 158(a)(1), by refusing to bargain with the certified representative of its employees. 188 N.L.R.B. No. 134. We grant enforcement.

## I.

Muscogee Lumber Co., Inc. (the company) operates a plant in Columbus, Georgia, where it is engaged in the manufacture and sale of lumber and lumber by-products. In 1969, the Warehouse, Laundry, Janitor, Meat Packers, Factory, Food and Motels Union (the union) began a campaign to organize various employees in the company's plant. On July 11, 1969, the union, having obtained the requisite number of authorization cards, filed a petition for certification as the bargaining agent for an appropriate unit of the company's employees. On September 3, 1969, the board conducted a representation election in which all 40 eligible employees participated, resulting in a vote of 29 to 11 in favor of the union.

On September 10, the company filed objections to the election, alleging that union conduct occurring after the July 11 certification petition warranted setting aside the election. A formal hearing on five of the company's objections was held on December 2, and on February 13, 1970, the hearing officer issued a report finding that the objections did not "raise material or substantial issues affecting the results of the election" and therefore should be overruled. The board later considered the hearing officer's report, along with the company's exceptions to the report, and concluded that there was no basis for setting aside the election. On May 19, 1970, the board certified the union as the exclusive bargaining representative for the unit and later denied the company's request for reconsideration.

Despite the board's decision and the union's requests for negotiation, the company refused to bargain with the union. On November 20, 1970, the board's regional director issued a complaint, based on an earlier charge filed by the union, alleging that the company had violated sections 8(a)(5) and 8(a)(1) of the Act by refusing to bargain with the certified representative of its employees. In its answer, the company repeated the objections previously raised in the representation proceeding and alleged that it had discovered "new and material evidence" relating to one of these objections. The board granted the general counsel's request for summary judgment, finding that all the objections raised by the company either were, or could have been, litigated in the prior representation proceeding and that the additional evidence was neither new nor previously unavailable. Accordingly, the board held that the company violated sections 8(a)(5) and 8(a)(1) and ordered the company to cease and desist from this unlawful conduct or from otherwise interfering with the employees' exercise of their section 7 rights. The board further ordered the company to bargain with the union.

## II.

 At the outset, we note that the board has been vested with wide discretion in representation matters and that its decision warrants special respect by reviewing courts. NLRB v. A. J. Tower Co., 1946, 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322. Our task is limited to determining the reasonableness of the board's findings. NLRB v. Golden Age Beverage Co., 5 Cir. 1969, 415 F.2d 26. In making this determination, the burden is on the company to demonstrate that the election was not fairly conducted. The "presumption is that ballots cast under the safeguards provided by Board procedure reflect the true desires of the participating employees." NLRB v. Zelrich Co., 5 Cir. 1965, 344 F.2d 1011, 1015.

 The company first contends that the election should be set aside because the union agent, Hepburn, told the employees that the union would make a bank account available to pay employees' personal expenses if a strike occurred, or even absent a strike, when employee need or hardship existed. The company argues that the promise of such benefits constituted an improper inducement and

impaired the employee's exercise of free choice. We disagree.

Although the company contends that the union promised to make a bank account available to pay for employees' expenses in periods of need or hardship, the record clearly supports the board's finding that Hepburn was referring to funds that would be available only in the event of a strike. To support its contention, the company relied solely on the testimony of Eddie McCoy, an employee with defective hearing who admitted that he "only heard bits and parts" of "Mr. Hepburn's statement" from his seat in the back at all the union meetings. Furthermore, there was no indication that the employees received any economic inducements from the union or that the union promised anything other than that, if certified, it would establish a fund to help pay expenses if a strike occurred.

■■ We also reject the company's contention that a promise of future strike benefits is an unlawful economic inducement. The board has long since determined that the promise of such benefits does not impair employee free choice. Lloyd A. Fry Roofing Co., 1957, 119 N.L.R.B. 661. The board and courts have held that union promises of similar benefits, such as waiving initiation fees, are a permissible campaign tactic. DITMCO, 163 N.L.R.B. 1019, enforced, 8 Cir. 1970, 428 F.2d 775; NLRB v. G. K. Turner Associates, 9 Cir. 1972, 457 F.2d 484. Employer and union inducements prohibited by the board have generally involved the promise or granting of tangible economic benefits to employees which enhance their economic position and induce them to vote for the donor. Wagner Electric Corp., 1967, 167 N.L.R.B. 532 (free union life insurance) General Cable Corp., 1968, 170 N.L.R.B. 1862 (union-donated gift certificates); NLRB v. Exchange Parts Co., 1964, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (employer grant of economic benefits). In contrast, a promise of strike benefits at most presents protection against a possible future liability. The promise of such contingent, remote, and uncertain benefits hardly constitutes a constraint on free choice. Unlike a premium specifically designed to buy votes, future strike funds are benefits routinely associated with unionization. Furthermore, since employers may advise employees of the dire economic consequences of strikes, it is only appropriate that the union inform employees of union benefits that may mitigate those consequences. Uninhibited and complete discussion of such effects of unionization is essential to a rational and informed choice by employees.

■ We also find no merit in the company's assertion that the union discussion of future strike benefits was vague and misleading. A lengthy exegesis, complete with precise figures and formulae, was neither necessary nor practicable. The record reveals no basis for setting aside the election on this ground.

The company's second contention is that the election should be voided because the union agent falsely told the employees that the company and the company counsel had attempted to bribe the union by offering it $1,000 to abandon the organization campaign. The union denies that it accused the company of such misconduct and maintains that its remarks were to the effect that in the past other employers had offered the union money to abandon organization campaigns. As evidence, the company presented employee McCoy's testimony. Although there was ample evidence that the union never made the alleged statements, the hearing examiner held that even if McCoy's testimony were credited, the bribery accusation was immaterial and had no impact on the election.

■ It is well-settled that neither the board nor the courts will censor or police campaign propaganda unless the misrepresentations are so substantial that the uncoerced desires of the employees cannot be determined. The test is whether the misrepresentation can reasonably be expected to have had a

significant effect on the election. Linn v. United Plant Guard Workers, 1966, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582; Anchor Manufacturing Co. v. NLRB, 5 Cir. 1962, 300 F.2d 301; S. H. Lynch and Co. v. NLRB, 5 Cir. 1968, 406 F.2d 766. In making this determination, four factors are relevant: (1) the materiality of the misrepresentation; (2) special knowledge of the speaker; (3) lack of opportunity for rebuttal; and (4) lack of independent knowledge on the part of the employees as the basis for making a proper evaluation. Hollywood Ceramics Co., 1962, 140 N.L.R.B. 221; United States Gypsum Co., 1961, 130 N.L.R.B. 901; S. H. Kress & Co. v. NLRB, 5 Cir. 1970, 430 F.2d 1234; NLRB v. Southern Foods, Inc., 5 Cir. 1970, 434 F.2d 717. In the present case, the hearing officer determined that the misrepresentation was immaterial and noted that the union's allegation of misconduct was thoroughly refuted by the company at plant-wide employee meetings held within two weeks of the election. When the employer has had an effective opportunity to reply to union misrepresentations, courts are reluctant to set aside an election. The record fully supports the board's finding. We therefore conclude that the board properly overruled the company's objection.[1]

■ The company also contends that the election should be set aside because the union agent made statements to employees concerning possible violence accompanying strikes and attempts by the company to buy their votes. The board held that these statements did not impair employee free choice, and we again find that substantial evidence supports that determination.

■ Finally, the company contends that the board erred in granting summary judgment in the unfair labor practice proceeding because the company had submitted "new and material evidence" that required setting aside the election. The "newly discovered" evidence consisted of an affidavit of an employee, Jim Goshay, who stated that the union agent told the employees that if the union won, interest-free loans would be available to the employees on a personal need basis. The board rejected the affidavit and found that the evidence could have been discovered with the exercise of reasonable diligence during the representation proceedings. The record indicates that the company's counsel interviewed Goshay prior to the representation hearing and that Goshay was cross-examined by the company's counsel when he testified at the hearing. The company clearly had ample opportunity to discover this evidence and to introduce it at the earlier proceeding. Its failure to do so is attributable mainly to its own lack of diligence. The board's rejection of the evidence at the later unfair labor practice proceeding was therefore proper.

We conclude that the board's order must be enforced.

Enforced.

---

1. NLRB v. Lord Baltimore Press, Inc., 8 Cir. 1966, 370 F.2d 397, relied on by the company, is wholly inapposite to the case at bar. In *Lord Baltimore*, the court held only that the employer was entitled to a hearing before the board on its allegation that the union had falsely accused the employer of attempted bribery. Here, the board held a hearing and determined that the misrepresentation had no significant impact on the election.