**UNITED STEELWORKERS OF AMERICA, AFL–CIO, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**METCO INCORPORATED, Petitioner-Cross Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

Nos. 73–3194, 73–3291.

United States Court of Appeals,
Fifth Circuit.

July 11, 1974.

George C. Longshore, Birmingham, Ala., for petitioner.

Elliott Moore, Deputy Assoc. Gen. Counsel, Peter Carre, Atty., N. L. R. B., Washington, D. C., Walter C. Phillips, Regional Director, Atlanta, Ga., for N. L. R. B. in both cases.

Martin H. Steckel, John G. Skinner, Atlanta, Ga., for petitioner-cross respondent.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

This case is before the Court on the petition of Metco, Incorporated (Metco) to review a decision of the National Labor Relations Board (Board) finding a violation of section 8(a)(5) of the Labor Management Relations Act, 29 U.S.C.A. § 158(a)(5),[1] and granting a cease and desist order. 205 N.L.R.B. No. 138 (1973). United Steelworkers of America, AFL–CIO (Union) also petitions for review of that portion of the Board's order denying its request for additional "make whole" relief. The Board has filed a cross-application for enforcement of its order. This Court has jurisdiction under section 10(e) and (f) of the Act.

## FACTS

Metco is a small manufacturer of steel reels and related products, located in Hartsell, Alabama. The Union filed a representation petition in August, 1972, with the Board seeking certification as the bargaining agent of a unit of eighty-three production and maintenance employees of Metco. The Union successfully organized the employees and won the election conducted by the Board by a vote of fifty-two for, to twenty-six against, unionization.[2]

On the basis of questionable pre-election union conduct, Metco submitted to the Board timely objections to the results of the election. The conduct attacked was that the Union had made misrepresentations in leaflets distributed to the employees on the evening before the election concerning wage rates obtained at several other plants organized by the Union and that pro-Union employees had threatened other employees with physical violence in order to coerce their support for the Union. The Regional Director conducted an administrative investigation, receiving affidavits from the company to establish the objectionable conduct. The Regional

---

1. This provision states:
 "(a) It shall be an unfair labor practice for an employer—
 "(5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 159(a) of this title."

2. Expedited elections are expressly authorized in section 9(c)(4) of the Act. A consent election under the rules of the Board, 29 C.F.R. § 102.69, was conducted in this case. For an explanation of expedited elections see N. L. R. B. v. Chelsea Clock Co., 411 F.2d 189, 191–192 (1st Cir. 1969).

Director credited the allegations in the company's affidavits as true, but found that while the wage rate claims were subject to different interpretations, they were not material misrepresentations; that no Union agent was implicated in the alleged threats; and that there was not an atmosphere of fear or coercion surrounding the election which would justify setting it aside. On review, the Board accepted the findings of the Regional Director and certified the Union as the exclusive bargaining agent for this unit of Metco's employees.

Subsequently Metco refused to bargain with the Union. A section 8(a)(5), refusal to bargain, charge was filed by the Union against Metco. On the basis of the Union's complaint and because Metco failed to offer any new or previously unavailable evidence to support its objections, the Board granted summary judgment for the Union. The Board also denied the Union's request for additional relief.

Metco charges as error on review: (1) Failure to invalidate the election on the basis of the Union's misrepresentations and threats; and (2) Denial of an evidentiary hearing on the claim of pre-election irregularities, in violation of the Board's rules and the due process clause of the Constitution. The Union claims error in the failure of the Board to impose a "make whole" remedy as was done in International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. N. L. R. B., 145 U.S.App.D.C. 384, 449

F.2d 1046 (1971); International Union of Elec., Radio, etc. v. N. L. R. B., 138 U.S.App.D.C. 249, 426 F.2d 1243, cert. denied, Tiidee Products, Inc. v. Int. Union of Elec., Radio, etc., 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970).

## THE SECTION 8(a)(5) CHARGE

In reviewing the Board's decision in this case, we are mindful that Congress "has vested the Board with broad discretion in dealing with matters relating to representation proceedings." N. L. R. B. v. White Knight Manufacturing Co., 474 F.2d 1064, 1067 (5th Cir. 1973).[3] All that is required is that the Board's findings upholding the election be supported by substantial evidence in the record.[4] 29 U.S.C.A. § 160(f). Since a certification by the Board is not reviewable, the only manner in which Metco could challenge the election and certification was by refusing to bargain and obtaining review of the pre-election misconduct in a subsequent section 8(a)(5), unfair labor practice proceeding, which the Union would file against the company for refusing to bargain.[5]

■ *Misrepresentation.* The Board has applied a flexible test,[6] which has been accepted by this Court,[7] for evaluating questionable campaign communications: "(1) whether there has been a misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth or who had special knowledge of the facts; (3) whether the other party had adequate

---

3. See N. L. R. B. v. Carlton McLendon Furniture Co., 488 F.2d 58, 61 (5th Cir. 1974); N. L. R. B. v. Muscogee Lumber Co., Inc., 473 F.2d 1364, 1366 (5th Cir. 1973); N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 29–30 (5th Cir. 1969). Cf. N. L. R. B. v. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946).

4. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1952); N. L. R. B. v. White Knight Manufacturing Co., supra, 474 F.2d at 1067 (5th Cir. 1973).

5. American Federation of Labor v. N. L. R. B., 308 U.S. 401, 408–412, 60 S.Ct. 300, 84 L.Ed. 347 (1940). See the cases cited in N. L. R. B. v. Carlton McLendon Furniture Co., Inc., supra, 488 F.2d at 61, n. 3.

6. Hollywood Ceramics Co., Inc., 140 N. L. R. B. 221, 224 (1962).

7. N. L. R. B. v. Muscogee Lumber Co., supra, 473 F.2d at 1368; N. L. R. B. v. Cactus Drilling Corp., 455 F.2d 871, 874 (5th Cir. 1972); N. L. R. B. v. Southern Foods, Inc., 434 F.2d 717, 720 (5th Cir. 1970). Cf. Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

opportunity to reply and to correct the misrepresentation; and (4) whether the employees had independent knowledge of the misrepresented facts, so that they could effectively evaluate the propaganda." N. L. R. B. v. Carlton McLendon Furniture Co., Inc., *supra*, 488 F.2d at 62. In the present case, the Regional Director, whose findings the Board adopted, investigated Metco's objections, and found that although the alleged misrepresentations were "subject to differing interpretations," they "did not constitute misrepresentation of material facts."

■ The leaflets distributed by the Union contained statements concerning its negotiation efforts at three other plants located at distances far from Metco. The claims made for gains at two plants were clearly not material misrepresentations or even false, rather merely statements strongly in the Union's viewpoint. Part of the statement as to wage increases at the third plant were found to include both wage and *fringe* benefits and to be overstated by 2.8 cents. This type of campaign propaganda has been found insubstantial in other election cases. In Southwestern Portland Cement Co. v. N. L. R. B., 407 F.2d 131, 134 (5th Cir. 1969), cert. denied, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1970), the company was challenging an election lost by five votes on the basis of a Union misrepresentation understating the amount of dues. This Court explained: "The telegram in question, in essence, merely outlined the events and *presented the Union's side of the story*, namely, that while the Union employees at the other plant were paying $10.50 a

month, a clear distinction should be drawn between regular dues assessed on an indefinite basis and a special three-month assessment which accounted for $5.00 of the current payments at the other plants." (Emphasis added). Likewise, in Follett Corp. v. N. L. R. B., 397 F.2d 91, 95 (7th Cir. 1968), a slight inaccuracy in a handbill asserting the wage rate obtained at a recently organized plant by the Union, *but* not clarifying that it would not become effective for another month, and the misrepresentation that employees received triple time during vacation, was found inconsequential in the context of the entire election campaign. *See also* Anchor Manufacturing Co. v. N. L. R. B., 300 F.2d 301 (5th Cir. 1962). Finally, the margin of victory,[8] approximately 2:1, in this case was so wide, that Metco had to show "the Union's assertions *in fact* constituted an interference with a free choice of bargaining representatives," since it did not, the Board could find that Metco failed on its burden of proof.[9]

■ *Coercion.* In challenges to election conduct based on alleged coercion, this Court has held: "The decisive factor . . . is not whether improprieties occurred during the campaign, but rather whether the challenged conduct produced such a climate of tension and coercion that the employees were effectively precluded from making a free choice. N. L. R. B. v. Singleton Packing Corp., 418 F.2d 275, 281 (5th Cir. 1969)." N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1067. This court then continued, pointing out: "The burden of proof is on the

8. *See* Follett Corp. v. N. L. R. B. *supra*, 397 F.2d at 95 n. 3. *See* note 11, *infra*.

9. *See* Southwestern Portland Cement Co. v. N. L. R. B., *supra*, 407 F.2d at 134; Shoreline Enterprises of America v. N. L. R. B., 262 F.2d 933, 942 (5th Cir. 1959).

The present case is distinguishable from our prior decision in Walled Lake Door Co. v. N. L. R. B., 472 F.2d 1010 (5th Cir. 1973). The Union in that case had mailed a letter to employees on the eve of the election which *falsely* asserted successful organ-

izing efforts at two other of the company's plants. This Court stressed that the record's revelation of the actual influence of the misrepresentation on a number of employees when coupled with the closeness of the election vote, 26–22, required that the election be overturned. In this case, there is a small overstatement of the wages at another plant, but no material misrepresentation, and the Union received a vote approximately twice the number cast for the company. *See* note 11, *infra*.

objecting party. As this Court observed in N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 30 (5th Cir. 1969):

'This is a heavy burden; it is not met by proof of mere misrepresentations or physical threats. Rather, specific evidence is required, showing not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election.' " *Id.*

 Metco presented the affidavits of four or five employees stating that they had been threatened by Union supporters and proof that an unidentified person had broken into the plant and shot up the vending machines in the employees' room. The Board found that the shooting incident occurred two months before, and was not related to, the election. Finally, the Board concluded that no Union agent had been implicated in the threats,[10] nor was there evidence of a persuasive atmosphere of coercion which would necessitate setting aside the election. In addition, we point out that any influence resulting from the objectionable conduct was slight and should not upset the election, because the Union won the election by almost twice the number of votes recorded by the company.[11] Metco did not produce affidavits attesting to threats of sufficient numbers even of actual coerced voters contrary to a voter's choice, to otherwise produce a different election result.[12] Rather the affidavits were submitted in an effort to prove an atmosphere of fear and coercion surrounding the election. Given the margin of victory by the Union and the fact that the Regional Director conducted the election and investigated the alleged threats, there is substantial evidence to support the Board's conclusion that any coercion was not "of the type that would justify setting aside of the election." [13]

10. While the absence of the Union agency should not be given conclusive effect, it is a factor which can properly be given weight by the Board. N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1067, n. 3; N. L. R. B. v. Golden Age Beverage Co., *supra*, 415 F.2d at 32, n. 5; Manning, Maxwell & Moore, Inc. v. N. L. R. B., 324 F.2d 857 (5th Cir. 1963). This is derived from the fact that "where the challenged conduct is not attributable to either of the parties it can be given less weight than if the conduct were attributable to the parties themselves. Bush Hog v. N. L. R. B., 420 F.2d 1266, 1269 (5th Cir. 1969); N. L. R. B. v. Staub Cleaners, Inc., 418 F.2d 1086, 1088 (2d Cir. 1969)." N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1067, n. 3.

11. If the vote margin in a representational election is very narrow, minor violations should be more closely scrutinized. In other words, when the apparent degree and multitude of the violations are small and the margin of the vote is wide, the less merit inheres in a petition for overturning the Board's decision upholding an election or denying an evidentiary hearing. N. L. R. B. v. Carlton McLendon Furniture Co., *supra*, 488 F.2d at 64; Walled Lake Door Co. v. N. L. R. B., *supra*, 472 F.2d at 1013, 1014; N. L. R. B. v. Overland Hauling, 461 F.2d 944, 946, 947 (5th Cir. 1972); N. L. R. B. v. Gooch Packing Co., 457 F.2d 361, 362 (5th Cir. 1972);

N. L. R. B. v. Singleton Packing Co., *supra*, 418 F.2d at 282, n. 5; Monroe Manufacturing Co. v. N. L. R. B., 403 F.2d 197, 201 (5th Cir. 1968); N. L. R. B. v. Bata Shoe Co., 377 F.2d 821, 831, n. 18 (4th Cir. 1967). Any analysis based on the numerical margin of the vote must of course take into consideration that the misrepresentations or coercion was so successful as to cause a wide margin of victory. But such persuasive influence would appear to be more capable of proof because of its overwhelming nature.

12. This Court and others have overturned Board decisions on the validity of an election or the necessity of an evidentiary hearing in narrowly won elections where the number of voters threatened corresponds to the number of votes sufficient to affect the result of the election. N. L. R. B. v. Medical Ancillary Services, 478 F.2d 96 (6th Cir. 1973) (51–49 vote); Monroe Manufacturing Co. v. N. L. R. B., *supra*, 403 F.2d at 201 (7–5 vote); N. L. R. B. v. Joclin Manufacturing Co., 314 F.2d 627 (2d Cir. 1963) (17–14 vote, with 9 challenged votes).

13. N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1067–1068; N. L. R. B. v. Golden Age Beverage Co., *supra*, 415 F.2d at 32; Manning, Maxwell & Moore, Inc. v. N. L. R. B., supra, 324 F.2d 857; Shoreline Enterprises of America v. N. L. R. B., *supra*, 262 F.2d at 942.

We conclude, as in *White Knight Manufacturing Co.*:

" . . . White Knight's objections describe a series of incidents which, notwithstanding the closeness of the vote, were simply insufficient to justify setting the election aside. At the worst, these incidents amounted to nothing more serious than verbal excesses and isolated attempts to harrass non-union employees, none of which had any demonstrated influence on the outcome of the election. Indeed, whatever impact they may have had, it was far from pervasive; for by the Company's own admission only six out of a total of 180 eligible voters were allegedly victimized. And there is no aparent indication that even any of these six were . . . unable to vote their personal preferences in the election. . . . White Knight merely failed to meet its burden of proof." 474 F.2d at 1068.

### EVIDENTIARY HEARING

■ The second issue raised by Metco is whether the Board erred in not granting the company a formal hearing on its objections, either post-election or on the unfair labor practice charge. Our negative answer is predicated on our holding that *completely crediting Met-co's objections*, no legal ground is established for setting aside the election; therefore, no hearing was necessary.[14]

■ This Court has repeatedly faced the question of the granting of an evidentiary hearing on representational election challenges. To reiterate, there is no statutory requirement for a post-election evidentiary hearing in a representational proceeding. Where there has been a consent election, the Board's rules and regulations, 29 C.F.R. § 102.-69(c) and (e), provide for an investigation by the Regional Director on the filing of objections. A hearing is provided only where the contentions "raise substantial and material factual issues." This Court has held that this standard "is also the constitutional standard under the due process clause."[15] The burden is on the objecting party to present a prima facie case requiring the overturning of the election—which requires "specific evidence of specific events from or about specific people" which support assertions which, if true, would be legally sufficient to upset the election.[16] The purpose behind the Board's rule, a policy we wish to stress, is to avoid a protracted proceeding and eliminate unnecessary delay in certifying a bargaining representative. If a hearing were required for all objections, it would prolong labor unrest and

---

The cases cited and relied on involved similar situations where threats of physical violence were committed but the election was allowed to stand. Moreover, in *White Knight Manufacturing Co., Shoreline Enterprises, and Manning, Maxwell & Moore* this Court upheld the elections even though the vote margin was narrow.

14. N. L. R. B. v. Golden Age Beverage Co., *supra*, 415 F.2d at 33; N. L. R. B. v. Crest Leather Manufacturing Corp., 414 F.2d 421, 423 (5th Cir. 1969); N. L. R. B. v. Capitan Drilling Co., 408 F.2d 676 (5th Cir. 1969); N. L. R. B. v. Smith Industries, 403 F.2d 889, 892 (5th Cir. 1968); N. L. R. B. v. Bata Shoe Co., *supra*, 377 F.2d at 826; N. L. R. B. v. Air Control Products of St. Petersburg, 335 F.2d 245, 250 (5th Cir. 1964).

15. N. L. R. B. v. Smith Industries, Inc., *supra*, 403 F.2d at 892. *See* N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1068; N. L. R. B. v. Singleton Packing Corp., *supra*, 418 F.2d at 280.

16. N. L. R. B. v. Carlton McLendon Furniture Co., Inc., *supra*, 488 F.2d at 61; N. L. R. B. v. Medical Ancillary Services, Inc., *supra*, 478 F.2d at 98–99; N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1068; Amalgamated Clothing Workers of America v. N. L. R. B., 137 U.S.App. D.C. 330, 424 F.2d 818, 828–829 (1970); N. L. R. B. v. Singleton Packing Corp., *supra*, 418 F.2d at 280; N. L. R. B. v. Golden Age Beverage Co., *supra*, 415 F.2d at 32–33; N. L. R. B. v. Tennessee Packers, Inc., 379 F.2d 172, 177–180 (6th Cir. 1967); N. L. R. B. v. O. K. Van Storage, Inc., 297 F.2d 74 (5th Cir. 1961).

impede collective bargaining contrary to the very purpose of the Act.[17]

The Board's denial of a post-election hearing was based on Metco's failure to make a prima facie showing that the election should be overturned and, therefore, did not raise substantial material issues of fact. The Board *accepted as true* the affidavits concerning threats submitted by Metco, and found that they failed to demonstrate any adverse effect on the atmosphere necessary for a fair election. Likewise, the Board found no *material* misrepresentation in the Union's leaflets.[18] While the demeanor of witnesses can often aid in judging the effect of preelection conduct, given the wide margin of victory by the Union, we cannot say that the Board abused its discretion in denying an evidentiary hearing. N. L. R. B. v. White Knight Manufacturing Co., *supra*, 474 F.2d at 1068.

■ Nor did the Board later err in denying a hearing and granting summary judgment on the unfair labor practice charge under section 8(a)(5). As declared in prior decisions, if a post-election hearing is not required, the Board may deny a hearing at the unfair labor practice proceeding, unless Metco could produce newly discovered evidence, offer previously unavailable evidence, or show that it was prevented in the representation proceeding from submitting relevant evidence.[19]

## UNION—"MAKE WHOLE" RELIEF

The union asked for additional "make whole" relief in the form of "at the minimum an order to bargain with respect to wages, hours of work or conditions of employment retroactively to the date of violation; and that the Employer be required to pay the wages of all the employees for periods of time spent on strike to protest the Employer's refusal to bargain, or in the alternate, that the Employer be required to reimburse the Union for the costs and expenses of a strike called to protest the Employer's refusal to bargain." The request for this type of additional compensatory relief was premised on the decision by the Court of Appeals for the District of Columbia in International Union of Elec. Radio, etc. v. N. L. R. B. [Tiidee Products], *supra*, 426 F.2d 1243, where the company's refusal to bargain was found "a clear and flagrant violation of the law [section 8(a)(5)]" and its objections to the representational election "patently frivolous." 426 F.2d at 1248. The court remanded the case to the Board for consideration of relief which would "make whole" the Union, because the Board's granting of only its tradi-

17. N. L. R. B. v. Medical Ancillary Services, Inc., *supra*, 478 F.2d at 98–99; Amalgamated Clothing Workers of America v. N. L. R. B., *supra*, 424 F.2d at 828–829; N. L. R. B. v. Singleton Packing Corp., *supra*, 418 F.2d at 280; N. L. R. B. v. Golden Age Beverage Co., *supra*, 415 F.2d at 32–33; N. L. R. B. v. Tennessee Packers, Inc., *supra*, 379 F.2d at 177–180; N. L. R. B. v. O. K. Van Storage, Inc., *supra*, 297 F.2d 74.

18. This Court's recent decision in N. L. R. B. v. Carlton McLendon Furniture Co., *supra*, 488 F.2d at 62–63, where the election was upheld but an evidentiary hearing ordered, is distinguishable from the present case. The handbill distributed, on the eve of the election in that case misrepresented the fact that the Union had been successful in an election conducted at a nearby plant.

This was material because both plants were subject to a joint organizing campaign by the Union, which knew that the election results were still uncertain at the time the handbill was distributed. There was also objectionable conduct at the election by a Union observer. Moreover, the vote margin in that case was narrow, 41 votes cast for the Union, 38 votes against, and 13 challenged ballots.

19. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 146–163, 61 S.Ct. 908, 85 L. Ed. 1251 (1941); Amalgamated Clothing Workers of America v. N. L. R. B., *supra*, 424 F.2d at 828–829; N. L. R. B. v. Crest Leather Manufacturing Co., *supra*, 414 F.2d at 423; N. L. R. B. v. Tennessee Packers, Inc., *supra*, 379 F.2d at 177–180.

tional remedy, a cease and desist order, was not adequate enforcement of the mandate of the Act, 29 U.S.C.A. § 160(c),[20] and, in fact, rewarded the company for its intransigence. *Id.*

The Board denied a "make whole" remedy in this case for the reasons explicated in Ex-Cell-O Corp., 185 N.L.R.B. 107 (1970), rev'd *sub nom.*, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, v. N. L. R. B., *supra*, 449 F.2d 1046. The Board in this three to two decision rejected *Tiidee Products* for two reasons. First, it objected because:

"As in Quality Rubber, the Court in Tiidee Products distinguished those cases in which the employer's failure to bargain rested on a 'debatable question.' With due respect for the opinion of the Court of Appeals for the District of Columbia, we cannot agree that the application of a compensatory remedy in 8(a)(5) cases can be fashioned on the subjective determination that the position of one respondent is 'debatable' while that of another is 'frivolous.' What is debatable to the Board may appear frivolous to a court, and vice versa. Thus, the debatability of the employer's position is an 8(a)(5) case would itself become a matter of intense litigation."[21]

Secondly and more importantly, the Board stressed the fact that the *Tiidee*

*Products* finding that the Board could award compensatory damages by assessing the amount of benefits an employee would have received under a collective bargaining contract if the employer had bargained in good faith in accordance with the Act, conflicts with the statutory command of section 8(d), 29 U.S.C.A. § 158(d),[22] as delineated in H. K. Porter Company, Inc. v. N. L. R. B., 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). Section 8(d) bars the Board or a court from ordering a party to accept a specific term in a collective bargaining contract. In other words, "by refusing to bargain, the argument runs, the employer has implicitly rejected all contract terms which would have provided increased employee benefits, and the order to pay 'damages' would effectively compel him to accept some or all of these terms." Note, NLRB Power To Award Damages in Unfair Labor Practice Case, 84 Harv.L.Rev. 1670, 1687 (1971).

Since the Board undertook no analysis of the Union's requests for a "make whole" remedy, but rejected it solely on the basis of *Ex-Cell-O Corp.*, it is necessary for us to reach the question of whether section 10(c) authorizes the Board to issue such relief. Relying on the rationale of, and the line of decisions flowing from, *Tiidee Products,* we hold that such "make whole" relief is necessary under section 10(c) for the Board to fulfill its task of devising remedies to effectuate the primary policy,

---

20. The pertinent part of this provision requires that the Board "issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such *affirmative action* . . . ., as will effectuate the policies of this subchapter." (Emphasis added).

21. In reversing *Ex-Cello-O Corp.* and commenting specifically on this language, the Court of Appeals for the District of Columbia responded:

"It is precisely this determination which *Tiidee Products—I* approves. . . ." 449 F.2d at 1050.

22. The pertinent language in this provision states: "For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees . . . but such obligation does not compel either party to agree to a proposal or require the making of a concession."

collective bargaining, of the Act.[23] In *Tiidee Products* the court stated: [24]

"The 'affirmative action' clause of § 10(c) is not a mere charter of authority that the Board has the option to exercise or ignore. It is, as the Court has recently stated, a 'broad command.' N. L. R. B. v. J. H. Rutter-Rex Manufacturing Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).

"We cannot discern, and the Board has not explained, on what basis it could or did conclude that its order under review is designed 'to insure meaningful bargaining.' Counsel for the Board tells us that the prospective order to bargain entered in this case is what is conventionally entered by the Board. Assuming the general validity of a purely prospective type of order, the case of brazen refusal to bargain, in violation of solemn obligations, presents special considerations. While such remedy may provide some bargaining from the date of the order's enforcement, it operates in a real sense so as to be counter-productive, and actually to reward an employer's refusal to bargain during the critical period following a union's organization of his plant. The obligation of collective bargaining is the core of the Act, and the primary

meanings fashioned by Congress for securing industrial peace, N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952). . . . Yet a prospective-only doctrine means that an employer reaps from his violation of the law an avoidance of bargaining which he considers an economic benefit. Effective redress for a statutory wrong should both compensate the party wronged and withhold from the wrongdoer the 'fruits of its violations.' Montgomery Ward & Company v. N. L. R. B., 339 F.2d 889, 894 (6th Cir. 1965)." 426 F.2d at 1249.

Even the Board, itself, in *Ex-Cell-O Corp.* recognized the inadequacy of its usual cease and desist order:

"We have given most serious consideration to the Trial Examiner's recommended financial reparations Order, and are in complete agreement with his findings that current remedies of the Board designed to cure violations of section 8(a)(5) are inadequate. A mere affirmance order that an employer bargain upon request does not eradicate the effects of an unlawful delay of two or more years in fulfillment of a statutory bargaining obligation. It does not put the employees in the position of bargaining strength

---

23. Food Store Employees' Union, Local 347, Amalgamated Meat Cutters v. N. L. R. B., 155 U.S.App.D.C. 101, 476 F.2d 546 (1973); Retail Clerks' Union, Local 1401 v. N. L. R. B., 149 U.S.App.D.C. 370, 463 F.2d 316 (1972); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. N. L. R. B., *supra*, 449 F.2d 1050; Southwest Regional Joint Board, Amalgamated Clothing Workers v. N. L. R. B., 142 U.S.App.D.C. 337, 441 F.2d 1027 (1970); I. U. E. v. N. L. R. B., 142 U.S.App.D.C. 270, 440 F.2d 298 (1970); Food Store Employees' Union, Local 347, Amalgamated Meat Cutters v. N. L. R. B., 139 U.S.App.D.C. 383, 433 F.2d 541 (1970); United Steelworkers of America v. N. L. R. B., 139 U.S.App.D.C. 146, 430 F.2d 519 (1970); I. U. E. v. N. L. R. B. [Tiidee Products], *supra*, 426 F.2d 1243.

While both the Courts of Appeal for the Second Circuit and the Ninth Circuit have

had the question raised, neither has reached it. Culinary Alliance and Bartenders' Union, Local 703 v. N. L. R. B., 488 F.2d 664 (9th Cir. 1973); Lipman Motors, Inc. v. N. L. R. B., 451 F.2d 823, 828–29 (2d Cir. 1971). This Court took the opportunity to comment on "make whole" relief in Amalgamated Clothing Workers of America v. N. L. R. B., 491 F.2d 595, 597 n. 1 (5th Cir. 1974), and approved it when granted in the appropriate circumstances—"where the Company's refusal to bargain is palpably frivolous in nature, and designed merely to delay the inevitable results of the Union's election victory."

24. The Court derived its primary support for *Tiidee Products* from the Supreme Court decision in Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), and our decision in N. L. R. B. v. Mooney Aircraft, Inc., 375 F. 2d 402 (5th Cir.), cert. denied, 389 U.S. 859, 88 S.Ct. 104, 19 L.Ed.2d 125 (1967).

they would have enjoyed if their employer had immediately recognized and bargained with their chosen representative. It does not dissolve the inadvertible employee frustration or protect the Union from a loss of employee support attributable to such delay. The inadequacy of the remedy is all the more egregious where, as in the recent NLRB v. Tiidee Products, Inc., case, the court found that the employer had raised 'frivolous' issues in order to postpone or avoid its lawful obligation to bargain." [25]

The critical step in finding such affirmative remedial authority in the Board is the distinguishing of the section 8(d) prohibition, explained in *Porter,* against the Board's compelling parties to agree to terms of a collective bargaining contract. While *Tiidee Products* adequately and thoroughly deals with this point,[26] we wish to add some brief analysis. Assuming for discussion that section 8(d) is a valid barrier to a "make-whole" remedy, it is arguably only a prohibition to awards of compensatory damages determined by assessing what contract benefits *would have* been negotiated had the employer not refused to bargain in violation of section 8(a)(5). The relief subsumed under the term "make whole" is not limited, how-

ever, to this peculiar type of monetary award. In other words, the requests for reimbursement for the costs and expenses of the strike in this case, or for legal fees and expenses,[27] or for organizing costs,[28] when caused by the employer's illegal refusal to bargain, cannot logically be argued to be related to section 8(d) subject matter. Therefore, there is even less supporting the Board's refusal in this case than in *Ex-Cell-O Corp.* to consider a "make whole" remedy when such elements of relief, not involving any relation to section 8(d), are requested.

▮▮▮▮ Having determined that the Board impermissibly failed to consider a "make whole" remedy, we find, however, no necessity for remanding to the Board. Metco's conduct is not so flagrant as to require the type of "Make whole" remedy sought in this case. In *Tiidee Products* the petition for review was based on objections "patently frivolous." The line of cases stemming from *Tiidee Products* has formulated that this type of remedy is not appropriate where the legality of an employer's objections and refusal to bargain are premised on a factually debatable question and where the litigation was not engaged in to delay collective bargaining.[29] This further

25. The compensatory relief issue has engendered a great deal of legal commentary; for further analysis see, e. g., Note, NLRB Power to Award Damages in an Unfair Labor Practice Case, 84 Harv.L.Rev. 1670 (1971); St. Antoine, A Touchstone for Labor Remedies, 14 Wayne L.Rev. 1039 (1968); Note, An Assessment of the Proposed "Make-Whole" Remedy in Refusal-to-Bargain Cases, 67 Mich.L.Rev. 374 (1968).

26. The court in *Tiidee Products* explained: ". . . We in no way suggest either that the Board can compel agreement or that the make-whole remedy is appropriate under circumstances in which the parties would have been unable to reach agreement by themselves. Quite the contrary, we have specifically limited the scope of our remand first, to consideration of past damages, not to compulsion of a future contract term, and second, to relate to damages based upon a determination of what the parties themselves would have

agreed to if they had engaged in the kind of bargaining process required by the Act. It is not within the scope of our remand for the Board to measure the amount of damages by reference to any contract term which could have been brought about only through a mandate to the employer not merely to engage in the process of collective bargaining but also to agree on a contract provision." 426 F.2d at 1253.

27. *See* Food Store Employees' Union, Local 347, Amalgamated Meat Cutters v. N. L. R. B., *supra,* 476 F.2d at 550–553, 433 F.2d at 543 n. 7.

28. *Id.*

29. *See* Retail Clerks' Union, Local 1401 v. N. L. R. B., *supra,* 463 F.2d at 325; Southwest Regional Joint Board, Amalgamated Clothing Workers v. N. L. R. B., *supra,* 441 F.2d at 1035–36; United Steelworkers of America v. N. L. R. B., *supra,* 430 F.2d at 521–522.

development in the *Tiidee Products* doctrine is dictated by the tension between the granting of a review of representational election objections and remedying the illegal refusals to bargain. As pointed out earlier, the only manner in which an employer can obtain review of the Board's determination upholding a challenged election is by committing an unfair labor practice under section 8(a)(5), refusing to bargain, and submitting election objections to the Board and the court on review of the unfair labor practice. The possibility of a more complete remedy for refusal to bargain cases where an employer's contentions are frivolous, should deter employers, who before had nothing to lose and much to gain by delaying collective bargaining, while leaving more time for the Board and the courts to consider meritorious petitions for review. *Cf.* IUE v. N. L. R. B., *supra*, 426 F.2d at 1249–1250.

In *Tiidee Products* and four other cases which the Board decided prior to the issuance of the *Tiidee Products* opinion, the Court of Appeals for the District of Columbia, itself, evaluated the refusal to bargain situations and remanded to the Board only if the employer's conduct was flagrant.[30] The court weighed such factors as the merit of the employer's objections to the representational election, the overall conduct of the employer during the pre-election organizing efforts by the Union such as other unfair labor practices committed by the employer during this period, prior anti-Union animus as detailed by a history of unfair labor practices, the motive of an employer in refusing to bargain, and the amount of harm inflicted upon the Union.[31] In this case, while the claimed misrepresentation borders on being spurious,[32] the contention that the threats may have created an atmosphere of fear at the election were not so frivolous as to require the Board to fashion a "make whole" remedy. Nor was there any indication that Metco was attempting unnecessarily to delay resolution of the election dispute by its petition for review in this case.[33]

The Board's order will be enforced.

30. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. N. L. R. B., *supra*, 449 F.2d at 1050 n. 21.

31. In *Tiidee Products*, *supra*, 426 F.2d 1253, the employer had violated section 8(a)(1), (3), and (5). The employer had engaged in discriminatory layoffs and discharge, and imposed additional production quotas on pro-Union employees. In addition there were coercive actions by supervisory personnel and threats by the president to close the plants. In *Tiidee Products—II*, *supra*, 440 F.2d at 298–299, the court considered a "make whole" remedy appropriate because in addition to the past history of bad conduct by the employer in *Tiidee Products—I*, there were now additional violations of section 8(a)(1), (3), (4), and (5). And in Food Store Employees' Union, Local 347, Amalgamated Meat Cutters v. N. L. R. B., *supra*, 433 F.2d at 542–543, the employer's history of nine unfair labor practice violations at other stores coupled with the finding by the Board that the employer's misconduct was flagrant and his refusal to bargain was in bad faith, was sufficient to dictate a "make whole" remedy. *See* Food Stores Employees' Union, Local 347, Amalgamated Meat Cutters v. N. L. R. B., *supra*, 476 F.2d at 550–554.

32. The misrepresentation asserted in this case should be compared to that put forward by the employer in *Tiidee Products*, *supra*, 426 F.2d at 1248, n. 5.

33. While we have examined the employer's conduct and objections in this case to determine the appropriateness of a "make whole" remedy, the Board, in future cases, should utilize its remedial discretion and expertise to resolve this question. Fibreboard Paper Products Corp. v. N. L. R. B., *supra*, 379 U.S. at 216, 85 S.Ct. 398; Consolo v. F. M. C., 383 U.S. 607, 620–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

The Board in granting affirmative compensatory relief is equipped with a broad range of remedies. Flexibility should be used in adjusting relief to the particular facts of each situation. An all-or-nothing rule is not ordinarily appropriate, since there are degrees of flagrancy. Food Store Employees' Union, Local No. 347, Amalgamated Meat Cutters v. N. L. R. B., *supra*, 476 F.2d at 554 n. 13. The Board's determination will of course be accorded the usual latitude given to its exercise of remedial discretion.

COLEMAN and AINSWORTH, Circuit Judges (specially concurring).

We concur in the result and in all of the excellent opinion prepared by Judge Tuttle except that portion which deals with the power of the Board to enter a "make whole" order. Since this is not the type of case which, in any event, would justify such an order, we intimate no opinion on that subject.